# ANNA M. THURSTON
## v.
# ALFRED J. THURSTON.

*Divorce—Permanent Alimony—Reduction of—Solicitor's Fees—Death of Child—Evidence—Practice.*

1. An appellate court will not, ordinarily, interfere when alimony *pendente lite* is allowed, or reverse a decree for permanent alimony.

2. In the case presented, this court holds. in view of the evidence, that a decree providing for the payment of permanent alimony for the support of the defendant and her child, should not be so modified as to reduce the amount thereof, in view of the death of the child, and that she should be allowed a reasonable sum for solicitor's fees in resisting the application for such reduction.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. BREWER & STRAWN, for appellant.

Messrs. CAREY & TRAINOR, for appellee.

UPTON, J. This was a petition filed by appellee to reduce the amount of alimony which had, by a decretal order of the Circuit Court of La Salle County, been awarded appellant for the support of herself and child.

It appears that some time in 1888, appellant filed her bill in equity in the court below, for a decree of divorce from her then husband, appellee, and for alimony, costs and the custody of her then infant child, for extreme and repeated cruelty on the part of her then husband to appellant. Appellee answered the bill, denying the allegation thereof; the facts were submitted to a jury who, after a long and exhaustive hearing, returned a verdict finding the appellee guilty as charged in the bill. It was further charged that appellee was an unfit person to have the care, custody and education of the infant child.

Thurston v. Thurston.

Upon coming in of the verdict, after overruling a motion for a new trial, the chancellor entered a decree granting appellant the divorce, and upon hearing the parties upon the question of alimony, custody of the child and costs, it was further ordered and decreed that appellee should pay to appellant for support of herself and child (the custody of the child having been decreed to appellant), the sum of $200 per annum, payable quarterly in advance, which was made a lien upon 200 acres of farming land then owned and occupied by appellee in La Salle county, nearly adjoining the city of Mendota, in that county, which was claimed to be incumbered by two judgments, confessed by the appellee after the commencement of the suit by appellant for divorce, the one to the father of the appellee for the alleged sum of $5,335, and the other to an aunt of appellee it is said, for the further alleged sum of $1,922. It was further claimed by appellee that he was indebted to others in various sums, so that his aggregated indebtedness, as he claimed, amounted to the sum of $12,000.

Nothing is shown indicating that appellee is not in full possession of his physical and mental faculties, and it does appear that he was in possession of both real and personal property, at the time of the hearing below. It must be apparent that under the evidence in this record, the amount of alimony awarded appellant for the support of herself and child, was by the original decree quite small, and of itself must have been wholly insufficient for their support. It further appears that at the time of rendition of the original decree, the appellant was able to work, to aid in the support of herself and child, and did so work as long as she was able, in a factory in Wisconsin. It further appears that the child died in 1889, and that appellant's health is so impaired from overwork, in her efforts to sustain herself and child, and from the mental and physical strain consequent upon such labor, care, nursing and death of her child, that she is now broken down in health, unable to perform any considerable labor, has no means of support, and is wholly dependent upon the charity of friends, and had been for some time preceding the hearing in the application at bar in the court below.

It further appears that appellee paid the first three install-
ments as ordered by the original decree, being $150, but
refused and neglected to pay the fourth and fifth installments
thereof falling due in March and June, 1889; but upon being
attached for contempt in not complying with the order of
court as provided in the decree, paid those installments.

Appellee also neglected and refused to pay the sixth and
seventh installments, and appellant was compelled to employ
attorneys to enforce payment thereof, and to pay therefor,
and it would appear to the most casual observer, that such
neglect and refusal to comply with the terms of the original
decree, was unjust, unnecessary and intentional, not to say wil-
ful and malicious, on the part of appellee, and done and for-
borne to keep the appellant from receiving such pittances of
the alimony awarded her.

It is apparent that the learned chancellor was not deeply
impressed with the claimed inability of appellee to pay the
installments under the decree.

Upon the death of the child and because thereof, appellee
filed his petition in the case at bar to reduce the amount of
alimony ordered paid appellant by the original decree, and
asking to be released wholly or in part from the payment of
two installments of alimony (then past due) to the appel-
lant, under the terms of the original decree.

This petition was heard by the chancellor who rendered the
original decree, in the court below, and upon proofs taken
modified the original decree, and ordered and decreed that
appellee pay to the appellant the two installments of $50 each
then past due, and reduced the amount of permanent alimony
thereafter to be paid by appellee to appellant, from $200 to
$150 per annum, and that the motion of appellant to be
allowed counsel fees and necessary expenses was refused, to
which order and decree exceptions were taken, and the cause
appealed to this court.

The questions presented may be briefly stated:

1. Should the original decree providing for the payment
of alimony to appellee have been modified because of the
death of the child?

2. Should appellant be allowed solicitor's fees because of the non-payment of the installments of alimony which became due January 1 and March 1, 1890, respectively?

1. The rule is well established, that appellate courts seldom interfere when alimony *pendente lite* is allowed, and are slow to reverse a decree for permanent alimony, as is clearly announced in Foote v. Foote, 22 Ill. 425, a leading case in this State on that subject. But, as held in that case and many subsequent cases, such allowance, although discretionary, is a judicial and not an arbitrary discretion, and is to be so held and regarded by appellate courts, and must be determined by the facts and circumstances of each particular case as presented.

It is clear that we are bound to assume the original decree for permanent alimony in the case at bar was just and equitable at the time of its rendition (and that decree is still in force except as modified on the hearing below), and if just and equitable then, should be enforced now, unless since its rendition something has transpired which will render its enforcement unjust and inequitable.

What is now alleged against it? Not the inability of appellee to pay it, for at each default upon which the appellee has been proceeded against for contempt in non-payment (and that has occurred more than once), the chancellor hearing the application has ordered appellee imprisoned until compliance with the decree, and appellee it seems was able to comply, by payment thereof.

But it is contended the child is dead, and as the alimony allowed was for the support of appellant and her child, upon the death of the child that alimony should be reduced as a matter of justice and equity to appellee.

We are unable to yield our assent to that proposition to the extent claimed.

We understand the rule to be observed in cases where permanent alimony is properly allowable, is that it should be adjusted when granted, in proportion to the needs of the person requiring it, and the pecuniary circumstances of the party who is to pay it; that in determining this, reference is to be

had to the mental and physical condition and capacity of the parties to support or maintain themselves, either from property in possession or ability to obtain it, as well as the other party's ability to pay it. Foote v. Foote, *supra*. This we regard as too well settled in this State to require further examination.

In the case at bar, it appears that during the life of the child, or for most of the time, the mother was physically able to, and did work to support herself and child, but that at the time of the modification of the original decree she was sick, unable to perform manual labor, had no means of support, and was dependent upon the charity of her friends, except the small sum of $200 awarded her by the original decree. It would seem that the necessities of appellant at the time of the modification of the decretal order were quite as pressing and as great to the full extent of the alimony allowed, as they could have been before the death of the child. Before that time she was able by her own efforts to contribute to that support, since that she has been unable to do so. We think that there ought not to have been any reduction made in the alimony as originally allowed appellee.

2.    We also think in view of the facts shown by the record before us, that the appellant should have been allowed a reasonable sum for her solicitor fees, in resisting the application upon the petition at bar. And we also think that the original alimony of $200 per year, payable to the appellant as provided in the former and original decree, should be restored in full as thereby provided, and ordered to be paid, and that the unpaid installments thereof which are due thereon should be paid in full by appellee with interest thereon at six per cent from the time the same fell due by the terms of the original decree until the payment thereof, and for that purpose and to that end the order and decree of the Circuit Court modifying such original decree is reversed and the cause is remanded with directions to the chancellor to so order and decree as herein above stated.

*Reversed and remanded with directions.*